IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VICI RACING, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 10-835-SLR |
| | ) |
| T-MOBILE USA, INC., | ) |
| | ) |
| Defendant, | ) |
| | ) |

**MEMORANDUM**

At Wilmington this 8r day of April, 2015, on remand from the United States Court of Appeals for the Third Circuit, having considered the parties' briefs on remand and the papers submitted therewith; the court issues its decision based on the following reasoning:

1. **Background.** Plaintiff VICI Racing, LLC ("plaintiff"), a Florida corporation with its principal place of business in Miami, Florida, filed this suit on September 30, 2010 against defendant T-Mobile USA, Inc. ("defendant"), a Delaware corporation with its principal place of business in Bellevue, Washington. (D.I. 1) Plaintiff claimed damages totaling $14,000,000 for the alleged breach of contract relating to a sponsorship agreement ("the Agreement") for a sports car racing team. (*Id.*) The Agreement provided for a $1 million payment in 2009[1] and $7 million payments in each of years 2010 and 2011. *VICI Racing, LLC v. T-Mobile USA, Inc.*, 921 F.Supp.2d 317, 324 (D. Del. 2013). Following a bench trial, the court found that defendant breached the

---

[1] Paid by defendant in 2009.

Agreement. *Id.* at 334. Specifically, the court concluded that plaintiff "was counting on the $7 million to pay some of the expenses incurred in the 2009 racing season . . . [and] was preparing for the 2010 season." *Id.* The court declined to award plaintiff the second $7 million payment, as plaintiff did not mitigate the damages and such payment would provide plaintiff with an unfair windfall. *Id.* The court entered judgment for the plaintiff and awarded damages of $7 million and reasonable attorney fees and costs, pursuant to the attorney fees provision in the Agreement. *Id.* at 334-35.

2. On March 1, 2013, defendant appealed the damages award to the Third Circuit and plaintiff cross-appealed, seeking the second payment of $7 million. On August 13, 2014, the Third Circuit affirmed the court's award of the first $7 million payment and reversed the court's denial of the second $7 million payment, remanding the case for further consideration of the 2011 damages issue. *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 304 (3d Cir. 2014). Specifically, the court should "consider, in the first instance, upon applying the appropriate burden of proof whether to award VICI the additional $7 million or a lesser sum based on a proper measure of expectation damages, including the deduction of actual costs avoided," but "shall not consider any evidence or argument that [plaintiff] failed to mitigate damages . . . ." *Id.*

3. **Standard.** Generally,

the non-breaching party is entitled to recover "damages that arise naturally from the breach or that were reasonably foreseeable at the time the contract was made." Contract damages "are designed to place the injured party in an action for breach of contract in the same place as he would have been if the contract had been performed. Such damages should not act as a windfall."

2

*Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 146–47 (Del. 2009) (citations omitted); *Duncan v. Theratx, Inc.*, 775 A.2d 1019, 1022 (Del. 2001) (citing Restatement (Second) of Contracts § 347 cmt. a). Expectation damages are calculated by

> (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus (b) any other loss, including incidental or consequential loss, caused by the breach, less (c) any cost or other loss that he has avoided by not having to perform.

Restatement (Second) of Contracts § 347 (1981). A plaintiff must "lay a basis for a reasonable estimate of the extent of his harm, measured in money." *Emmett S. Hickman Co. v. Emilio Capaldi Developer, Inc.*, 251 A.2d 571, 573 (Del. Super. 1969) (citations omitted). "Once the loss attributable to nonperformance has been determined, a court must subtract any costs avoided as a result of the breach that are evident in the record." *VICI Racing*, 763 F.3d at 294 (citing *WaveDivision Holdings, LLC v. Millennium Digital Media Sys., L.L.C.*, Civ. No. 2993–VCS, 2010 WL 3706624, at *19-20, *23 (Del. Ch. Sept. 17, 2010)).

4. Avoided costs and expenses are part of the "but-for" world of lost profits, which plaintiff must establish with reasonable certainty. *Englewood Terrace Ltd. P'ship v. United States*, 113 Fed. Cl. 718, 731 (Ct. Cl. 2013) (quoting *S. Nuclear Operating Co. v. United States*, 637 F.3d 1297, 1304 (Fed. Cir. 2011)). A defendant seeking to offset a damages award due to avoided costs "must move forward by pointing out the costs it believes the plaintiff avoided because of its breach." *S. Nuclear Operating Co.*, 637 F.3d at 1304. "[T]he burden [then] shift[s] to the plaintiff to incorporate those saved costs into its formulation of a plausible but-for world. *Id.*

5. **Analysis.** The parties agree that the starting point for the calculation of the 2011 damages is the second payment of $7 million. (D.I. 168 at 8; D.I. 169 at 16) As

3

the Third Circuit mandate made clear, the court should subtract any costs avoided as a result of the breach that are evident in the record.[2] With respect to the expense of racing a car, VICI Team President Ron Meixner ("Meixner") testified that a "normal budget number is about $5 million for a car" and the "window [is] between [$]4 and $5 million" per car.[3] (D.I. 119 at 268:18-19; 41:21-24) Meixner also testified that "if you skinny it down . . . by your teeth," the number is $2.5 million per car and that "$1 million is not enough to even run one car." (Id. at 268:20-23; 72:8-14) Meixner also testified that "the startup costs in racing are very high." (Id. at 71:16-17)

6. Plaintiff identifies the avoided costs as the payroll of $20,000 per month (estimated during preparations for the 2010 season). (D.I. 168 at 10-11; D.I. 120, 292:2-293:14), for a 2011 total of $240,000. Plaintiff also reluctantly posits that the court could infer that "the costs avoided to race a car in 2011 w[ere] $1 million," if Meixner's testimony is used. Plaintiff insists, however, that this would negate the "testimony in the record that the startup costs of racing are extremely high." (D.I. 168 at 11 n.8) In preparation for the 2010 season, Meixner testified that he had ordered another trailer (for the second car), had new staff on standby, and had ordered two new Porsche racecars. (D.I. 120 at 292:8-11) Plaintiff reasons that, taking into account the award of the 2010 payment, plaintiff would, in 2011, be exactly where it would have

---

[2] Plaintiff argues that defendant should be precluded from presenting avoided costs, citing to the Third Circuit's statement that defendant "never argued to the District Court at trial that [plaintiff] actually avoided costs." VICI Racing, 763 F.3d at 296-97. Plaintiff argued at trial and on appeal that the 2011 payment was owed based on a liquidated damages theory. Id. at 290. The parties' arguments at trial and in post-trial briefing were centered on such theory. The court declines to constrain the parties' current briefing to a theory rejected by the Third Circuit.
[3] Defendant also points to an email from Meixner to Horn referring to plaintiff's estimate of $3.5 million spent in the first year. (DTX-84)

4

been had the 2010 season taken place, i.e., plaintiff had the equipment, the racing cars, and materials needed for the 2011 season. (D.I. 168 at 10) Defendant, on the other hand, points to Meixner's testimony and identifies the avoided costs as $4-5 million per car, therefore, $8-10 million for two cars in 2011.[4] (D.I. 169 at 16-17)

7. The testimony reveals that plaintiff was in a position to race in 2010, that is, most of its start-up expenses were behind it after the 2010 payment (which plaintiff has recovered). Plaintiff did not race in 2010. Looking to the 2011 season, the court concludes from Meixner's testimony that a conservative estimate of the racing costs would have been $2.5 million per car. Thus, by not racing in 2011, plaintiff avoided $5 million in costs. As to other losses, the court declines to credit plaintiff's argument that the two associate sponsorships[5] would have been profit without the breach, thus, should be taken into consideration in the 2011 damages analysis. (D.I. 168 at 9 & n.7) See *VICI Racing*, 763 F.3d at 294 ("Expectation damages may not be speculative."). As defendant points out, the Agreement bars the recovery of consequential damages (PTX1 at 11.1) and "lost profits on collateral business arrangements," such as additional

---

[4] Defendant proffers one additional piece of evidence, a budget proposal for 3 years of racing, to support its contention that the avoided costs are consistent with Meixner's testimony of $4-5 million per car. (D.I. 178, ex. A) For 2011, the up-front expenses are $0 and annual expenses are $9,319,000 (the same number as for 2010). (*Id.*) The court is reluctant to rely on a document not vetted through trial at this juncture. Additionally, the reality of the situation is that plaintiff did not race in 2010, making the estimate of its 2011 budget more difficult.

[5] Henkel Corporation entered into a sponsorship on November 25, 2009, for $500,000 spread over the 2010 and 2011 seasons, payable by December 31, 2009. (DTX121 at 118) Cross Country Automotive Services ("CC") entered into a sponsorship on October 15, 2009 for $100,000 for the 2010 season (payable by October 31, 2009) and $100,000 for the 2011 season (payable by April 1, 2010). (DTX64 at 664-65) According to the parties' briefing, the sponsorships were paid out. (D.I. 168 at 9 & n.7; D.I. 169 at 11 & n.12; D.I. 172 at 8)

5

sponsorships, are reasonably considered consequential damages. *eCommerce Indus., Inc. v. MWA Intelligence, Inc.*, Civ. No. 7471-VCP, 2013 WL 5621678, at *47 (Del. Ch. Sept. 30, 2013) (citing *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109-10 (2d Cir. 2007).

8. Pursuant to the attorney fee provision in the Agreement, the court awards plaintiff its additional reasonable attorney fees and costs incurred post-remand. *VICI Racing*, 921 F.Supp.2d 335.

9. **Conclusion.** For the aforementioned reasons, plaintiff is awarded $2 million in damages for the 2011 season, plus its reasonable attorney fees and costs. An order shall issue.

United States District Judge